1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  RICHARD L. LEWIS,                ) Civil No. 12cv02073 AJB(RBB)
                                     )
12                  Plaintiff,       ) **REPORT AND RECOMMENDATION**
                                     ) **GRANTING IN PART AND DENYING**
13  v.                               ) **IN PART PLAINTIFF'S MOTION FOR**
                                     ) **SUMMARY JUDGMENT [ECF NO. 10],**
14  CAROLYN W. COLVIN, Commissioner  ) **DENYING DEFENDANT'S CROSS-**
    of Social Security,              ) **MOTION FOR SUMMARY JUDGMENT**
15                                   ) **[ECF NO. 11], AND REMANDING**
                    Defendant.       ) **FUR FURTHER PROCEEDINGS**
16  _____ )

17

18        On January 19, 2010, Plaintiff Richard L. Lewis filed an

19  application for supplemental security income benefits alleging a

20  disability onset of February 26, 2009. (Admin. R. Attach. #2, 13,

21  ECF No. 8; <u>id.</u> Attach. #5, 119.)  The Social Security

22  Administration ("SSA") denied his claim on March 18, 2010, and

23  again upon reconsideration on July 7, 2010. (<u>Id.</u> Attach. #2, 13;

24  <u>id.</u> Attach. #3, 44-45; <u>id.</u> Attach. #4, 55-59.)  Lewis then filed a

25  written request for a hearing, which is dated July 26, 2010. (<u>Id.</u>

26  Attach. #2, 13; <u>id.</u> Attach. #4, 62.)

27        A hearing was held before Administrative Law Judge ("ALJ")

28  Larry B. Parker on May 18, 2011. (<u>Id.</u> Attach. #2, 25.)  He issued

a written decision on June 22, 2011, finding that Plaintiff was not disabled. (See id. at 20.) The Appeals Council declined to review the decision on July 10, 2012. (Id. at 1.)

On August 22, 2012, Lewis filed a Complaint in this Court against Defendant Michael J. Astrue, then-Commissioner of Social Security [ECF No. 1]. Plaintiff challenges the denial of his claim for disability insurance benefits. (Compl. 2-3, ECF No. 1.) Defendant filed an Answer to Complaint on November 2, 2012, along with the Administrative Record [ECF Nos. 7, 8]. On January 30, 2013, Lewis's Motion for Summary Judgment or Remand was filed [ECF No. 10]. Astrue filed a Cross-Motion for Summary Judgment on February 12, 2013, with a Memorandum of Points and Authorities [ECF No. 11]. The Cross-Motion is essentially the same document as Defendant's Opposition to Plaintiff's Motion for Summary Judgment, which was filed the same day [ECF No. 12]. Lewis did not file an opposition to the Cross-Motion.

Since the initiation of this lawsuit, Carolyn W. Colvin has replaced Astrue as the Acting Commissioner of Social Security. Colvin is therefore substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).

The Court finds this matter suitable for decision without oral argument. See S.D. Cal. Civ. R. 7.1(d)(1). For the reasons set forth below, the Court recommends that the district court **GRANT IN PART AND DENY IN PART** Lewis's Motion for Summary Judgment [ECF No. 10], **DENY** Defendant's Cross-Motion for Summary Judgment [ECF No. 11], and remand the case for further proceedings.

12cv02073 AJB(RBB)

## I. MEDICAL EVIDENCE

Plaintiff if a sixty-one-year old male who graduated from high school and attended three years of college. (Admin. R. Attach. #2, 29, ECF No. 8; <u>id.</u> Attach. #4, 81.) He previously worked at an auto dealership as a sales manager and as a finance manager. (<u>Id.</u>)

Lewis began seeking treatment for back pain in September of 2003. (<u>Id.</u> Attach. #7, 297.) An MRI completed on October 7, 2003, showed that Lewis had degenerative disk disease at L4-5 and L5-S1. (<u>Id.</u> at 293-94.) In April and May of 2004, he received epidural steroid injections. (<u>Id.</u> at 338-42.) On October 4, 2004, Dr. Virgil Hilliard, M.D., performed a provocative discography on Plaintiff that "revealed a severely degenerated disk with a right posterolateral leak." (<u>Id.</u> at 318.) Plaintiff was evaluated on November 3, 2004, by Dr. Sanjay Khurana, M.D., who opined that based on Lewis's MRI, he had a "significantly collapsed disk at L5-S1 as well as a blackened disk at L4-5 . . . ." (<u>Id.</u> at 320.) Dr. Khurana subsequently performed an interbody and posterolateral fusion procedure. (<u>Id.</u> at 330.)

On May 2, 2006, Lewis underwent another MRI, which revealed "no clear impingement upon the neural elements." (<u>Id.</u> at 257.) His back pain persisted, and he later had the interbody and posterolateral fusion surgery reversed and the hardware removed. (<u>Id.</u> at 330-31, 334.) Seven weeks after surgery, on December 11, 2006, the claimant reported that his back pain had improved but his leg pain continued. (<u>Id.</u>)

Plaintiff sought treatment for pain in his back and legs from Dr. Janith Seidel, a family practitioner, on September 6, 2007. (<u>Id.</u> at 277.) The physician diagnosed Lewis with diabetes,

ventricular tachycardia, lumbar disk disorder, lumbar spondylosis, hypermlipidemia, and hypertension. (Id. at 278.)

Almost eighteen months later, on February 27, 2009, Plaintiff returned to Dr. Seidel and complained that his back pain was getting worse. (Id. Attach. #8, 717.) The doctor determined that Lewis had failed back syndrome and she recommended acupuncture. (Id. at 718.) Dr. Seidel again diagnosed the claimant with diabetes, ventricular tachycardia, lumbar disk disorder, lumbar spondylosis, hypertension, a nonruptured cerebral aneurysm, and migraines. (Id. Attach. #7, 289-90.) In a letter addressed "To Whom It May Concern" and dated March 8, 2011, Dr. Seidel described Lewis's physical limitations.

> As a result of Mr. Lewis's conditions he cannot sit, stand, or walk for more than one hour total in an eight hour work day on a sustained basis, he can only occasionally lift and carry up to ten pounds, and he has significant limitations in doing repetitive reaching, handling, fingering, and lifting. As a result, he is markedly limited, essentially precluded in his bilateral upper extremities for grasping, turning and twisting objects, using fingers/hands for fine manipulations, and using arms for reaching (including overhead).
>
> Additionally, he is precluded from pushing, pulling, kneeling, bending, and stooping. His condition also interferes with his ability to keep his neck in a constant position (e.g. looking at a computer screen, looking down at a desk) so he could not do a full time job that requires this activity on a sustained basis.

(Id. Attach. #9, 878.) The treating physician ultimately opined that Lewis's recovery potential was poor, he was only capable of working at a low-stress job, and his symptoms would become worse in a competitive work environment. (Id.)

On May 21, 2009, Plaintiff consulted with Dr. Lisa Anne Phillip, M.D., about his back pain. (Id. Attach. #7, 255-56.) Dr. Phillip diagnosed Lewis with postlaminectomy syndrome of the lumbar

4

region, arthropathy of lumbar facet, degeneration of lumbosacral
intervertebral disk, and myofascial pain syndrome. (Id. at 258.)
Two weeks later, an MRI was performed which revealed fusion at the
L4 to S1, persistent left L5-S1 spondylotic foraminal stenosis, and
minor multi-level spondylosis. (Id. at 281-82.) On the same day,
an x-ray was taken which showed that Lewis had "postoperative and
mild degenerative changes with mild scoliosis and
spondylolisthesis." (Id. at 280.) Plaintiff also sought
acupuncture treatment again, to which he responded favorably. (Id.
at 373.)

Dr. Louis Rosen, an osteopathic specialist in physical
medicine and rehabilitation, evaluated Lewis on February 19, 2010.
(Id. Attach. #8, 557.) Dr. Rosen observed that Plaintiff moved
cautiously, used a walking stick, and suffered from atrophy of his
gluteal muscles. (Id. at 559.) The doctor diagnosed Lewis with
postlaminectomy syndrome, diabetes, and "deconditioning/chronic
pain syndrome." (Id. at 560.)

On March 2, 2010, Dr. S. Brodsky, D.O., completed a residual
functional capacity ("RFC") questionnaire. (Id. Attach. #7, 464-
68.) Dr. Brodsky opined that Plaintiff could frequently lift or
carry ten pounds and could stand or walk at least two hours in an
eight-hour day. (Id. at 465.) According to Dr. Brodsky, Lewis
could sit six hours in an eight-hour day and had unlimited ability
to push and pull. (Id.) Plaintiff could also occasionally climb,
stoop, kneel, crouch, and crawl, but never balance. (Id. at 466.)
The doctor concluded that Lewis had the RFC to perform sedentary
work. (Id. at 470.)

Dr. Gregory Nicholson, M.D., completed a comprehensive psychiatric evaluation of Plaintiff on March 4, 2010. (Id. at 472-77.) The physician noted that Lewis took prescription medications Xanax and nortriptyline. (Id. at 473.) Dr. Nicholson stated that Plaintiff did not have symptoms consistent with any psychiatric conditions and determined that "[f]rom the psychiatric standpoint, the claimant's condition is expected to remain stable without treatment." (Id. at 476.) Based on the examination, Dr. Nicholson drew the following conclusions:

1. The claimant is able to understand, remember, and carry out simple one or two-step job instructions.
2. The claimant is able to do detailed and complex instructions.
3. The claimant's ability to relate and interact with coworkers and the public is not limited.
4. The claimant's ability to maintain concentration and attention, persistence and pace is not limited.
5. The claimant's ability to associate with day-to-day work activity, including attendance and safety is not limited.
6. The claimant's ability to accept instructions from supervisors is not limited.
7. The claimant's ability to maintain regular attendance in the work place and perform work activities on a consistent basis is not limited.
8. The claimant's ability to perform work activities without special or additional supervision is not limited.

(Id. at 476-77.)

On April 12, 2010, Lewis sought treatment for his lower back and leg pain from Dr. Michael Scott Jaffe, a specialist in physical medicine and rehabilitation. (Id. at 515-16.) Dr. Jaffe opined that Plaintiff suffered from limited lumbar flexion, questionable stocking-glove loss of sensation in both feet and toes, poor vibratory sensation in both metatarsal joints, poor proprioreception in both feet, and mild atrophy of the left foot muscle. (Id. at 518.) He also stated that Lewis had moderate

6

bilateral lumbar paraspinal spasms, moderate bilateral lumbar facet tenderness, a wide-based gait with less knee flexion than normal, and two and a half centimeters less circumference in the left thigh compared to the right. (Id. at 518-19.) As a result, the physician diagnosed Plaintiff with postlaminectomy syndrome of the lumbar region. (Id. at 519.)

Dr. Jaffe completed a lumbar spine impairment questionnaire two weeks later. (Id. Attach. #9, 806-12.) There, he noted that Plaintiff had poor recovery potential and walked with a limp. (Id. at 806-07.) In an eight-hour work day, Dr. Jaffe estimated that Lewis could only sit, stand, or walk for less than one hour each and that Plaintiff's symptoms would frequently interfere with his ability to concentrate. (Id. at 808, 810.) Dr. Jaffe opined that Lewis would need to get up and move around every half hour for ten to fifteen minutes. (Id. at 809.) He also stated that Plaintiff could lift or carry five to ten pounds occasionally and up to five pounds frequently. (Id.) The doctor ultimately concluded that Lewis was unable to work. (Id. at 811.)

When Plaintiff was evaluated by a neurologist, Dr. Sumati Rawat, M.D., on April 27, 2010, the doctor noted that Lewis was "unable to give good effort" during the strength testing because of his pain. (Id. Attach. #8, 501.) Dr. Rawat determined that Lewis had decreased sensation to pin pricks and touch in a stocking distribution and "differential decreased pin prick in the left medial foot and calf in the L5 distribution." (Id.) Additionally, Plaintiff had decreased reflexes, a very cautious, wide-based, antalgic gait, and an inability to perform a heel-to-shin maneuver due to back pain. (Id.)

On May 4, 2010, Dr. Rawat noted that the claimant was still suffering from back pain and taking Norco, morphine, nortriptyline, and gabapentin. (Id. Attach. #9, 814.) She opined that Plaintiff had a flat affect, decreased sensation in a stocking distribution below the knee, and differentially decreased pin prick sensation in the left foot and calf in an L5 distribution. (Id. at 815.) The doctor again stated that Lewis exhibited decreased reflexes and walked with a very cautious, antalgic, and wide-based gait. (Id.) A nerve conduction velocity/electromyograph (NCV/EMG) study was also completed by Dr. Rawat which showed left L5 radiculopathy with past axonal loss and active denervation. (Id. at 816-17.) Dr. Rawat diagnosed Plaintiff with post-laminectomy syndrome. (Id. at 817.) Two months later, Dr. R. Masters, M.D., reviewed Plaintiff's medical history; he affirmed the finding that Lewis had the RFC to perform sedentary work and was able to return to work as a financial manager. (Id. Attach. #9, 793.)

On October 25, 2011, four months after the ALJ issued his decision, Plaintiff sought an independent medical evaluation from an orthopedic surgeon, Dr. Alanson Mason. (Id. at 896-905.) Dr. Mason examined Lewis and diagnosed him with lumbar spondylosis at L4-5 and L5-S1; dextroscoliosis of the lumbar spine; facet joint arthrosis at L5-S1; status post-lumbar laminectomy; discectomy and fusion with instrumentation L4-5 and L5-S1; narcotic drug dependency; diabetes; and diabetic polyneuropathy. (Id. at 904.) He concluded that "[t]he cumulative effect of multiple co-mobidities preclude [Plaintiff's] return to substantial gainful employment . . . ." (Id.)

Two and a half weeks later, Dr. Mason completed a cervical spine impairment questionnaire where he opined that during the course of an eight-hour day, Lewis could sit for three hours and stand or walk for one hour. (Id. at 908, 911.) Every hour, however, Plaintiff would need to get up and move around for ten minutes. (Id. at 911.) The doctor also determined that Lewis could frequently lift five pounds, occasionally lift five to twenty pounds, and never lift over twenty pounds. (Id.) He noted that Plaintiff frequently experienced pain, fatigue, or other symptoms that interfered with his ability to concentrate. (Id. at 912.) According to Dr. Mason, Lewis was capable of performing a job with low stress, but would likely miss work two to three times a month because of his impairments. (Id. at 912, 914.)

## II.   THE ADMINISTRATIVE HEARING

On May 18, 2011, an administrative hearing was held. (Id. Attach. #2, 25.) Lewis, his former attorney Michael Rickard, a vocational expert, and a medical expert were present at the hearing. (Id.) Judge Parker heard testimony from Plaintiff, the vocational expert, and the medical expert. (Id. at 28-43.)

### A.   Lewis's Testimony

Plaintiff testified that he was not working due to his multiple impairments. (Id. at 29-30.) To manage his pain when he previously worked at an auto dealership, Lewis would ice his back two to four times a day, prop his feet up on his desk, and move around when not consulting with customers. (Id. at 33.) He later began to take pain medication, but the medicine made him confused and unable to "think straight." (Id.) As a result, he was terminated from his job. (Id.)

Lewis testified that he took 120 milligrams of morphine a day along with Norco, Lorazepam, and "all kinds of other medicines." (_Id._ at 34.) He claimed that the medications caused him to nap up to three hours during the day. (_Id._ at 34-35.) Plaintiff also maintained that he was unable to read books because the medications impaired his ability to "keep the storyline[s] straight." (_Id._ 35-36.) Rather, he stated that his days were spent icing his back, watching television, and helping his wife with minor household chores such as dusting, making spaghetti, and some light grocery shopping. (_Id._ at 35-38.) Lewis represented that he was unable to return to work as a finance manager because he suffered from leg and back pain, along with numbness in his feet. (_Id._ at 38.) Additionally, he was unable to "think straight" or walk. (_Id._)

**B.   The Medical Expert's Testimony**

Dr. Arthur Brovender, the medical expert, testified that while the claimant did suffer from severe limitations, he did not meet or equal any of the listed impairments. (_Id._ at 30.) To support this conclusion, the expert cited two MRI's of Plaintiff's lumbosacral spine. (_Id._) Both showed post-operative changes, degenerative disk disease, osteoarthritis, and a solid fusion of the L4 to S1. (_Id._) According to the expert, the medical evidence also showed that Lewis suffered from weakness in his big toe, decreased sensation in both legs, and lower back pain at the L5-S1 space. (_Id._ at 30-31.) Plaintiff received acupuncture and epidural injections to help treat these ailments. (_Id._)

The expert noted that the records indicated that Plaintiff had a normal gait, a negative straight leg raise, mild decreased range of motion at the lumbosacral spine, and decreased motor strength

10

and sensation. (Id. at 31.) The electromyogram (EMG) performed on
August 5, 2004, was negative, and a subsequent discogram completed
in October of that year showed fifty percent concordance. (Id.)
Five years later, however, Lewis's gait and neurological and
sensory examinations were normal. (Id.)

Dr. Brovender then discussed a report prepared on April 27,
2010, which showed that Plaintiff had been complaining of chronic
lower back pain and cramping in his lower extremities. (Id.)
Lewis had stocking anesthesia in his legs that was possibly due to
his diabetes. (Id.) According to the report, Plaintiff exhibited
a cautious gait, but his deep tendon reflexes were present and
symmetrical and he had a negative straight leg raise. (Id.) The
expert stated that the fusion in Lewis's back was solid, and an EMC
showed L5 radiculitis and "spinal cord stimulator." (Id.)

The medical expert then described the evidence contained in
Exhibits 13F, 18F, and 21F. (Id.) Plaintiff's bilateral
radiculitis was again noted. (Id.) Exhibit 18F showed that Lewis
used a cane; his straight leg raise test was negative; and his
neurological sensory examinations were normal. (Id.) The medical
expert noted that in Exhibit 20F, one of Lewis's treating
physicians stated that Plaintiff could perform a low-stress job.
(Id.)

Based on this evidence, the medical expert opined that Lewis
could sit six to eight hours in a work day and stand or walk for
four. (Id. at 32.) According to Dr. Brovender, Plaintiff could
lift ten pounds frequently and twenty pounds occasionally, as well
as bend, stoop, squat, and kneel occasionally. (Id.) Lewis could
use stairs and ramps occasionally, but should avoid ropes,

11

scaffolds, and ladders. (<u>Id.</u>) Lastly, the expert testified that Plaintiff had no limitations in reaching overhead or with fine or gross manipulation. (<u>Id.</u>)

**C.  The Vocational Expert's Testimony**

Finally, vocational expert John Kilcher also testified at the hearing. (<u>Id.</u> at 40.) He stated that Lewis's previous jobs as a financial manager and sales manager are both classified as sedentary and skilled work. (<u>Id.</u>)

The ALJ asked the vocational expert whether a person of advanced age with a post-high school education and the limitations that Dr. Brovender provided would be able to perform Plaintiff's past relevant work. (<u>Id.</u> at 41.) The expert opined that a person with that background and those limitations would be able to perform both of Lewis's previous jobs. (<u>Id.</u>) The ALJ then asked if that same person could carry out Plaintiff's past relevant work activity if that claimant was unable to use ladders, ropes, and scaffolds; limited to lifting ten pounds occasionally and less than ten pounds frequently; able to sit six out of eight hours; and able to stand or walk two out of eight hours. (<u>Id.</u>) The vocational expert responded, "Yes." (<u>Id.</u>)

Michael Rickard, Lewis's attorney, then proposed hypotheticals to the vocational expert. (<u>Id.</u>) Rickard asked whether a person of the same age, education, and work experience as Plaintiff could perform his past relevant work experience if the hypothetical claimant was unable to (1) sit, stand, or walk for more than one hour in a work day; (2) lift or carry ten pounds more than occasionally; and (3) push, pull, kneel, bend, and stoop; and (4) keep his neck in a constant position. (<u>Id.</u> at 41-42.) Kilcher

said, "No" and that there were no jobs available for a person with such a profile. (Id. at 42.)

Next, the attorney asked whether a person with the same education and work experience as Lewis could perform his past relevant work if the hypothetical claimant was off task twenty percent of the time due to pain or side effects from the use of medication. (Id.) The vocational expert said that a person with the limitations described could not perform Plaintiff's past relevant work and that no jobs existed for that person. (Id.

### III. APPLICABLE LEGAL STANDARDS

**A. _Generally_**

To qualify for disability benefits under the Social Security Act, an applicant must show two things: (1) He or she suffers from a medically determinable impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy. See 42 U.S.C.A. §§ 423(d)(1)(A), (2)(A) (2011). An applicant must meet both requirements to be classified as "disabled." Id.

Sections 205(g) and 1631(c)(3) of the Social Security Act allow applicants whose claims have been denied by the Social Security Administration to seek judicial review of the Commissioner's final agency decision. Id. §§ 405(g), 1383(c)(3). The district court may affirm, modify, or reverse the Commissioner's decision. Id. § 405(g). The court should affirm the decision unless "it is based upon legal error or is not

supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). The district court may also remand the matter to the Social Security Administration for further proceedings. 42 U.S.C.A. § 405(g) (2011).

**B.  Remand for Further Proceedings**

A district court may remand a Social Security disability decision under sentence four of 42 U.S.C. § 405(g). Hoa Hong Van v. Barnhart, 483 F.3d 600, 605 (9th Cir. 2007). That provision states, "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g). "A sentence-four remand is essentially a determination that the Commissioner erred in denying benefits." Havrylovich v. Astrue, No. 09-1113-HA, 2011 U.S. Dist. LEXIS 7187, at *19 (D. Or. Jan. 25, 2011) (citing Hoa Hong Van, 483 F.3d at 605). If a case is remanded and an additional hearing is held, the Commissioner may modify or affirm the original findings of fact or the decision. 42 U.S.C.A. § 405(g).

A remand to the Commissioner for further proceedings or to award benefits is within the court's discretion. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). "'If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate.'" Id. (quoting Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981)). "[T]he

proper course, except in rare circumstances, is to remand to an administrative agency for additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16 (2002) (internal quotation marks and citation omitted).

## IV. DISCUSSION

Plaintiff contends that the ALJ improperly rejected the opinions of his treating physicians, Drs. Jaffe and Seidel. (See generally Pl.'s Mot. Summ. J. Remand Attach. #1, 11-16, ECF No. 10.) Lewis also alleges that it was error for the Appeals Council not to remand the case in light of the new opinion of Dr. Alanson Mason, an examining orthopedist. (Id. at 16-17.) Finally, Plaintiff claims that the ALJ's conclusion that Lewis lacked credibility was not supported by substantial evidence. (Id. at 17-18.)

In her Cross-Motion for Summary Judgment, Colvin maintains that the ALJ properly considered the medical opinion evidence in the record and gave valid reasons for discounting the assessments of Drs. Jaffe and Seidel. (Cross-Mot. Summ. J. Attach. #1 Mem. P. & A. 3-5, ECF No. 11.) Defendant additionally argues that the most recent opinion provided by the examining orthopedist is not a ground for remand because it is not material. (Id. at 5-7.) Lastly, the Commissioner asserts that the ALJ properly determined that Plaintiff was not fully credible. (Id. at 7-10.)

"Administrative law judges are responsible for reviewing the evidence and making findings of fact and conclusions of law." 20 C.F.R. § 404.1527(e)(2) (2012). Generally, conflicts in the evidence should be resolved by the Commissioner, not the courts. See Spraque v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987); Laffoon

v. Califano, 558 F.2d 253, 254 (5th Cir. 1977).  The ALJ is the final arbiter of ambiguities in the medical evidence.  Tommasetti v. Astrue, 533 F.3d 1035, 1041-42 (9th Cir. 2008).  The Commissioner's decision must be upheld when the evidence would support more than one rational interpretation.  Havrylovich, 2011 U.S. Dist. LEXIS 7187, at *4 (citing Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002)).

The Ninth Circuit has articulated the standard district courts must apply when deciding whether to remand a matter for further proceedings:

> Remand for further administrative proceedings is appropriate if enhancement of the record would be useful.  Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits.  More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citations omitted); see Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011) (applying the standard outlined in Benecke).  "A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be."  Strauss, 635 F.3d at 1138.

## A.  The ALJ's Adverse Credibility Determination

The Court will address the assessment of Plaintiff's credibility first because it informs the analysis of another of Lewis's claims.  Plaintiff argues that ALJ Parker failed to provide

16

substantial evidence to support his finding that Lewis's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible. (Pl.'s Mot. Summ. J. Remand Attach. #1, 17-18, ECF No. 10.) The claimant contends that the ALJ relied on written statements provided by Plaintiff and his wife, Juanita, which indicated that he was able to function at a higher level than what was alleged by his treating sources. (<u>Id.</u> at 18 (citing Admin. R. Attach. #2, 18, ECF No. 8).) Lewis claims that the ALJ failed to elaborate on his credibility findings, constituting a "clear violation of well-entrenched case law that demands a strict accounting for so severe a finding." (<u>Id.</u>)

Colvin maintains that the ALJ's determination that Plaintiff was not fully credible was supported by proper reasoning and substantial evidence. (Cross-Mot. Summ. J. Attach. #1 Mem. P. & A. 7, ECF No. 11.) Moreover, Defendant asserts that Lewis fails to challenge any of the credibility factors that the ALJ considered. (<u>Id.</u>) "As such, Plaintiff has conceded the factors are valid and supported by substantial evidence, and the ALJ's credibility finding should be upheld on this basis alone." (<u>Id.</u>)

The ALJ properly concluded that Lewis was not credible, the Commissioner insists, because Plaintiff's daily activities were inconsistent with his claims of disability. (<u>Id.</u> at 8 (citing Admin. R. Attach. #2, 18-19, ECF No. 8).) Colvin claims that according to Richard and Juanita Lewis, Plaintiff was able to make meals, watch television, play games, shave, shower, run errands, cook, dress himself, style his hair, use the toilet, wash dishes, do laundry, pick up the house, walk, drive a car, shop, e-mail, take photos, go out to dinner, and visit family and friends. (<u>Id.</u>

(citing Admin. R. Attach. #2, 18, ECF No. 8; id. Attach. #6, 184-91).)

Next, Defendant contends that the ALJ also properly considered the February 27, 2009 progress notes, which showed that Lewis was within normal limits and was not suffering from pulmonary distress or neurological deficits. (Id. at 9 (citing Admin. R. Attach. #2, 16, ECF No. 8; id. Attach #7, 391-92).) Colvin additionally urges that the ALJ considered a September 2009 physical examination report that described Lewis as alert and cooperative, with an appropriate affect, and a full range of movement; Plaintiff had a negative cerebellar examination and an ataxic gait. (Id. (citing Admin. R. Attach. #2, 16, ECF No. 8; id. Attach. #7, 289-90).) Finally, the Commissioner alleges that the ALJ properly discounted Plaintiff's credibility because the record showed that Lewis's pain had been effectively treated with medication. (Id. (citing Admin. R. Attach. #2, 16, ECF No. 8).)

"In order for the ALJ to find [claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010) (quoting Thomas, 278 F.3d at 958). In deciding whether a plaintiff's testimony regarding subjective pain is credible, the adjudicator must engage in a two-step analysis. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)); see Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004). "'First, the ALJ must determine whether the claimant has presented

objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Vasquez, 572 F.3d at 591 (quoting Lingenfelter, 504 F.3d at 1036). Second, if the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of the symptoms if he gives "'specific, clear and convincing reasons'" for doing so. Id. (quoting Lingenfelter, 504 F.3d at 1036); Smolen v. Chater, 80 F.3d 1273, 1283-84 (9th Cir. 1996).

Here, Judge Parker determined that Lewis's impairments "could reasonably be expected to cause the alleged symptoms . . . ." (Admin. R. Attach. #2, 18, ECF No. 8.) No one challenges this conclusion. The first prong of the ALJ's inquiry regarding Lewis's credibility is satisfied. See Vasquez, 572 F.3d at 591. Next, the Court determines whether Judge Parker provided clear reasons for the adverse credibility finding that are supported by the evidence in the record.

The Commissioner's reasons for rejecting a claimant's testimony must be "clear and convincing." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)). To support a finding that the plaintiff was not credible, the ALJ must "'point to specific facts in the record which demonstrate that [the plaintiff] is in less pain than she claims.'" Vasquez, 572 F.3d at 592 (quoting Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)). The ALJ must make specific findings "stat[ing] which pain testimony is not credible and what evidence suggests the complaints are not credible." Dodrill, 12 F.3d at 918. A reviewing court should not be forced to

speculate as to the grounds for an administrative law judge's rejection of a plaintiff's allegations of disabling pain. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)); see also Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002) (explaining that the ALJ must build an accurate and logical connection between the evidence and the decision).

In general, questions of credibility are for the ALJ to resolve. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). Courts should not "second-guess" an ALJ's credibility determinations. Allen v. Heckler, 749 F.2d 577, 580 (9th Cir. 1984). If the evidence is conflicting and could be rationally interpreted more than one way, the court must uphold the ALJ's decision. Id. at 579.

Social Security Ruling 96-7p provides the relevant standard:

4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

5. It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator

gave to the individual's statements and the reasons for
that weight.

SSR 96-7p, 1996 SSR LEXIS 4, at *2-4 (July 2, 1996).

The Ninth Circuit has articulated the grounds on which an ALJ
may properly decide to discredit a claimant's testimony:

> In weighing a claimant's credibility, the ALJ may
> consider [claimant's] reputation for truthfulness,
> inconsistencies either in his testimony or between his
> testimony and his conduct, his daily activities, his work
> record, and testimony from physicians and third parties
> concerning the nature, severity, and effect of the
> symptoms of which he complains.

Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)
(citations omitted).  Where the ALJ's credibility assessment is
supported by substantial evidence, it will not be disturbed even
where some of the reasons for discrediting a claimant's testimony
were improper.  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d
1155, 1163 (9th Cir. 2008); see also Tonapetyan v. Halter, 242 F.3d
1144, 1147-48 (9th Cir. 2001).

Here, Judge Parker determined that Plaintiff's statements were
not fully credible "to the extent they are inconsistent with the
above [discussed] residual functional capacity assessment."
(Admin. R. Attach. #2, 18, ECF No. 18.)  He continued:

> In terms of the claimant's alleged impairments, the
> consultative examiner indicated that the claimant has no
> difficulty with dressing, bathing or attending to his own
> personal hygiene needs unassisted.  The claimant can
> appropriately handle bills as well as cash, and he is
> able to go out on his own (Exhibit 6F).  The claimant's
> wife, Juanita Lewis, completed a third party function
> report on February 17, 2010, indicating that she is with
> the claimant on a daily basis, and that they make a home
> together spending time together every day making meals,
> watching television and playing games.  The claimant
> shaves and showers independently.  The claimant reads e-
> mail on the computer every day and is able to go to the
> post office, bank, and grocery store unassisted.  Mrs.
> Lewis stated that the claimant can independently run

errands, and retains the ability to cook and prepare meals for the family, including sandwiches, oatmeal, and meats such as roast or spaghetti. Mrs. Lewis indicated that the claimant's daily personal care includes independently dressing, showering, keeping his hair clean and neat, shaving, feeding, and using the toilet. Mrs. Lewis stated that the claimant washes dishes on a daily basis, does laundry a couple of times a week, and "picks up" on a daily basis. Mrs. Lewis encourages the claimant to "go outside" every day. The claimant can walk and drive a car on daily outings, and he shops for groceries, paper products, cards, and medications. The claimant's daily hobbies include e-mail/computer news, photography, and watching television. Mrs. Lewis stated that the claimant remains social going out to dinner, visiting friends and family, holding his grandchildren and he engages in these activities once or twice a month. Mrs. Lewis stated that every day when she gets home from work, they share a meal, sometimes [sic] call relatives, plays [sic] computer games, and fall asleep watching television (Exhibit 4E). In the function report dated February 28, 2010, completed by the claimant, he stated that everyday he takes a shower and gets dressed independently. He retains the ability to take a walk, make the bed, wash the laundry, and wash dishes. He sometimes drives down to the beach for the sunset. The claimant stated that every day he prepares food or meals that require preparation time from 5 minutes to a few hours and he cooks more because he has more time. He also engages in light housekeeping and goes outside every day, stating that he tries "to get out and walk as much as possible." He travels by foot, walking, goes out alone, and is able to drive a car without assistance. The claimant shops for groceries a few times a week for an hour or more each time, and he stated his hobbies include watching television every day and photography. The claimant uses a cane/walking stick to ambulate, but admitted that it was not medically necessary and not prescribed by his physician (Exhibit 5E). The claimant's daily level of functioning, as corroborated by his spouse, is indicative of a higher level of functioning than that of his treating sources.

(Id.)

In assessing Lewis's credibility, ALJ Parker did not explicitly rely on the progress notes, the September 2009 exam notes, or on the fact that Plaintiff's pain was being treated effectively with medication, as argued by Colvin. (Compare id., with Cross-Mot. Summ. J. Attach. #1 Mem. P. & A. 9, ECF No. 11.)

These grounds were not specifically invoked by the ALJ when he made his credibility determination, thus, the Court will not speculate whether they were a basis to reject Lewis's credibility. <u>See</u> <u>Bunnell</u>, 947 F.2d at 346.

"'[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability.'" <u>Orn v. Astrue</u>, 495 F.3d 625, 639 (9th Cir. 2007) (quoting <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001)); <u>see also</u> <u>Fair v. Brown</u>, 885 F.2d 597, 603 (9th Cir. 1989) (citations omitted) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").

The Ninth Circuit has identified a two-part test for using a claimant's daily activities as the basis for an adverse credibility determination. <u>Orn</u>, 495 F.3d at 639. First, the court considers whether a claimant's daily activities contradict the claimant's other testimony. <u>Id.</u> Second, it determines whether the daily activities meet the threshold for transferable work skills. <u>Id.</u> "The ALJ must make specific findings relating to [the daily] activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." <u>Id.</u> (internal quotation marks omitted) (quoting <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005)).

The ALJ relied on Plaintiff's "daily level of functioning" to make an adverse credibility determination. (<u>See</u> Admin. R. Attach.

23

#2, 18, ECF No. 8.)  Judge Parker made no mention of whether the claimant's daily activities contradicted his other testimony.  (See id.)  Accordingly, the administrative law judge did not satisfy the first ground for using a claimant's daily activities to make an adverse credibility determination.  See Orn, 495 F.3d at 639.

Futhermore, to rely on a Plaintiff's daily activities to support an adverse credibility determination, the claimant's daily activities must correspond to transferable work skills.  See id.  The inquiry is whether the claimant "is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting."  Smolen, 80 F.3d at 1284 n.7; see Burch, 400 F.3d at 681.  Many home activities, however, may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication.  Smolen, 80 F.3d at 1284 n.7 (citing Fair, 885 F.2d at 603).  In Vertigan, 260 F.3d 1044, the plaintiff shopped for groceries, socialized, walked at the mall, and swam; the court still found her complaints credible because some of these activities were not transferable to a work setting, and she did not engage in them for a substantial part of the day.  Id. at 1049-50.

Here, Judge Parker did not attempt to correlate Lewis's daily activities to a particular type of job.  (See Admin. R. Attach. #2, 18, ECF No. 8); see also Burch, 400 F.3d at 681; Vertigan, 260 F.3d at 1050 ("[A]ctivities such as walking in the mall and swimming are not necessarily transferable to the work setting with regard to the impact of pain.").  Moreover, the ALJ did not discuss whether Plaintiff engaged in these physical activities for a substantial part of the day.  See Vertigan, 260 F.3d at 1050 ("A patient may do

24

these activities despite pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved."); Reddick, 157 F.3d at 722 (holding that sporadic activities followed by periods of rest are not inconsistent with subjective complaints of severe pain).

The ALJ's conclusory reliance on Lewis's daily activities was not a proper reason to discredit Plaintiff's subjective pain testimony. See Richards v. Astrue, No. 11-cv-6011-JRC, 2012 WL 3279523, at *3 (W.D. Wash. Aug. 10, 2012) ("[T]he ALJ failed to find explicitly that plaintiff's activities of daily living were transferable to a work setting and he failed to identify specifically which testimony was credible and what evidence undermined Plaintiff's complaints. Therefore, this reliance on activities of daily living was not supported by 'specific, cogent reasons.'"). Similarly, the reasons articulated by the ALJ do not constitute clear and convincing reasons for rejecting Lewis's testimony.

There may be evidence in the record that the ALJ can rely on as "specific, clear and convincing reasons" for rejecting the claimant's testimony. Indeed, the Defendant discusses multiple bases that could have been relied upon to discount Plaintiff's credibility. (See Cross-Mot. Summ. J. Attach. #1 Mem. P. & A. 8-9, ECF No. 11.) The Commissioner made a similar argument in Vasquez v. Colvin, No. ED CV 12-1302-E, 2013 U.S. Dist. LEXIS 86554, at *7-8 (C.D. Cal. June 19, 2013), which the court rejected.

> The ALJ's decision does not specifically identify any of these considerations as the reason or reasons for the ALJ's credibility determination. The ALJ's decision

> mentions some of these considerations, but does not
> expressly base the credibility determination on any of
> them.  Consequently, the Court cannot affirm the
> credibility determination on the basis of any of these
> considerations.

Id. Accordingly, the court remanded the matter for further administrative review.  Id. at *8.

The ALJ is in a better position to evaluate credibility than this Court.  See Vasquez, 572 F.3d at 591 (internal quotation marks and citations omitted); see also Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) ("We are wary of speculating about the basis of the ALJ's conclusion . . . .").  The Commissioner should address the outstanding issues before making a decision as to Lewis's disability.  See Swims Under v. Astrue, 473 F. App'x 552, 553 (9th Cir. 2012) (remanding for further proceedings where the ALJ failed to cite sufficient reasons for his adverse credibility determination).

In considering Lewis's credibility, the ALJ failed to assess the transferability of Plaintiff's daily activities to a work setting.  This assessment and its effect on the weight given to Plaintiff's subjective testimony are unknown.  The error cannot be overlooked.  The ALJ did not give other legitimate reasons for discounting Lewis's credibility.  See, e.g., Batson, 359 F.3d at 1197.  There are outstanding issues to resolve, and it is not clear from the record that ALJ Parker would be required to find Plaintiff disabled if his testimony was credited.  See Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d at 1138.  On this basis, a remand for further proceedings rather than an award of benefits is appropriate.

26

**B.    The Opinions of Drs. Jaffe and Seidel**

Next, Plaintiff contends that the ALJ improperly rejected the opinions of Lewis's treating doctors and instead relied on the assessments of nonexamining physicians. (Pl.'s Mot. Summ. J. Remand Attach. #1, 13, ECF No. 10.)  According to 20 C.F.R. § 404.1527(d), a treating physician's opinion must be accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record . . . ."  20 C.F.R. § 404.1527(c)(2) (1012).  If the treating physician's opinion is not given controlling weight, the following factors are applied to determine what weight to give the opinion:  (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the treating physican, and (6) any other factors brought to the attention of the ALJ which tend to support or contradict the opinion.  Id. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6).

Opinions of treating physicians may be rejected under certain circumstances.  See Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d at 1195.  "Cases in [the Ninth Circuit] distinguish among the opinions of three types of physicians:  (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d at 830 (footnote omitted).

The standard for determining whether an ALJ properly rejected the opinion of a treating physician varies. If the treating doctor's opinion is not contradicted by another physician, the ALJ must give clear and convincing reasons for rejecting it. Thomas v. Barnhart, 278 F.3d at 957; see also Spelatz v. Astrue, 321 F. App'x 689, 692 (9th Cir. 2009); Lester, 81 F.3d at 830.

On the other hand, if the treating physician's opinion is contradicted, "[t]he ALJ must give specific, legitimate reasons for disregarding the opinion of the treating physician.'" Batson, 359 F.3d at 1195 (quoting Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)); see also Lingenfelter v. Astrue, 504 F.3d at 1042. An ALJ may discredit opinions "that are conclusory, brief, and unsupported by . . . objective medical findings." Batson, 359 F.3d at 1195.

Similarly, the opinion of an examining doctor is entitled to greater weight than that of a nonexamining doctor. Lester, 81 F.3d at 830 (citing Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir. 1984)). "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1527(d)(3), (5)).

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining or a treating physician." Lester, 81 F.3d at 831 (citing Pitzer, 908 F.2d at 506 n.4; Gallant, 753 F.2d at 1456). "[T]he report of [a] non-treating, non-examining

28

physician, combined with the ALJ's own observance of [the]
claimant's demeanor at the hearing d[oes] not constitute
substantial evidence" and does not support an ALJ's "decision to
reject the examining physician's opinion that the claimant [is]
disabled." Id. (quoting Gallant, 753 F.2d at 1456) (internal
quotation marks omitted).

This does not mean that an ALJ may never reject a treating or
examining physician's opinion in favor of a nonexamining medical
expert's testimony. "[T]he findings of a nontreating, nonexamining
physician can amount to substantial evidence, so long as other
evidence in the record supports those findings." Saelee v. Chater,
94 F.3d 520, 522 (9th Cir. 1996). The nonexamining physician's
opinion must be "supported by other evidence in the record and
consistent with it." Morgan v. Comm'r of Soc. Sec. Admin., 169
F.3d 595, 600 (9th Cir. 1999).

"When a nontreating physician's opinion contradicts that of
the treating physician - but is not based on independent clinical
findings, or rests on clinical findings also considered by the
treating physician - the opinion of the treating physician may be
rejected only if the ALJ gives 'specific, legitimate reasons for
doing so that are based on substantial evidence in the record.'"
Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir.
1995); see also Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir.
1989)).

The ALJ must set out a "detailed and thorough summary of the
facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." Id. at 600-01 (quoting Magallanes, 881 F.2d at 750). The ALJ is not required to discuss each item of evidence, but the record should indicate that all evidence presented was considered. Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000); Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "[A]n ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317-18 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)) (citing Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988); Kent v. Schweiker, 710 F.2d 110, 115 (3d Cir. 1983)). "Further, an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings . . . ." Batson, 359 F.3d at 1195 (citing Matney, 981 F.2d at 1019; Tonapetyan v. Halter, 242 F.3d at 1149). The reviewing court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion.'" Tacket v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

Plaintiff alleges that the only physicians to examine Lewis and evaluate his residual physical function were Drs. Jaffe and Seidel. (Pl.'s Mot. Summ. J. Remand Attach. #1, 12, ECF No. 10.) Lewis contends that Dr. Jaffe's clinical findings were that Plaintiff suffered from the following:

> limited lumbar flexion, stocking glove loss of sensation
> in both feet and toes, poor vibratory sensation in both
> metatarsal joints, poor proprioception in both feet, mild
> atrophy of the left foot muscle, moderate bilateral
> paralumbar spasm, moderate lumbar facet tenderness
> bilaterally, a wide-based gait with less knee flexion
> than normal, and 2.5 centimeters less circumference in
> the left thigh compared to the right[.] Dr. Jaffe
> diagnosed postlaminectomy syndrome of the lumbar region,
> also suspecting that his left lower extremity
> radiculopathy could be due to his diabetic peripheral
> neuropathy.

(Id. (citing Admin. R. Attach. #8, 519, ECF No. 8).)  Plaintiff also argues that the record shows that he tried various remedies to control his pain, including fusion and instrumentation insertion; subsequent removal of that instrumentation; epidural injections; acupuncture; and prescriptions for hydrocodone and morphine.  (Id. at 13.)  Despite this evidence, the ALJ still rejected both of the treating physicians' opinions.  (Id.)

According to Lewis, the ALJ provided three reasons for discounting the opinions of Drs. Jaffe and Seidel, none of which were clear and convincing.  (Id.)  First, Plaintiff states that the ALJ rejected the opinions because they were not supported by the evidence of record.  (Id. (citing Admin. R. Attach. #2, 19, ECF No. 8).)  Lewis alleges that this type of general statement is a legally insufficient reason to reject the opinion of a treating physician.  (Id.)  Plaintiff argues that this assertion is factually inaccurate in light of the diagnostic and clinical evidence, which included two unsuccessful lumbar surgeries, MRI's that showed "the continued presence of persistent left L5-S1 spondylotic foraminal stenosis [Admin. R. Attach. #7, 281-82, ECF No. 8]," and an EMG/NCV study that showed "an L5 radiculopathy with active denervation [Id. Attach. #9, 816-17]."

Second, Lewis contends that the ALJ rejected the opinions of Drs. Jaffe and Seidel because they conflicted with Juanita and Richard Lewis's assertions regarding his daily activities. (Id. at 14.) The ALJ found that the statements were "'indicative of a higher level of functioning than that alleged by [Plaintiff's] treating sources.'" (Id. (quoting Admin. R. Attach. #2, 18, ECF No. 8).) Yet, maintains Lewis, the only activities that he was able to perform "are of such minimal physical exertion and are performed so sporadically or for such short periods that they do not logically bear upon his ability to sit, stand, walk, lift, or carry for the duration, regularity, or intensity that even full-time sedentary work would entail." (Id.)

Finally, Plaintiff urges that ALJ Parker rejected the opinions of Drs. Jaffe and Seidel because they appeared to be based primarily on Lewis's subjective complaints that his pain was moderately severe, constant, and diffuse. (Id. at 14-15 (citing Admin. R. Attach. #2, 19, ECF No. 8; id. Attach. #9, 876, 878-79).) Plaintiff responds that in addition to relying on his statements, the treating physicians also provided their assessments of how long the claimant was able to sit, stand, and walk, as well the extent to which he could lift and carry objects. (Id. at 15.)

Plaintiff asserts that ALJ Parker based his decision on the opinions of nonexamining review physician Brodsky and medical advisor Brovender rather than on the opinions of the treating physicians. (Id. (citing Admin. R. Attach. #2, 31-32, ECF No. 8; id. Attach. #7, 464-68).) Yet, "[n]either source offered any explanation whatsoever for their significant departure from the opinions of the treating sources as to the functional impact of

their patient's spinal impairments." (_Id._)  Absent specific and legitimate or clear and convincing reasons justifying the rejection of the opinions of these opinions, Plaintiff insists that the ALJ committed "harmful error."  (_Id._ at 16.)

On the other hand, the Defendant argues that ALJ Parker gave valid reasons for discounting the opinions of the treating physicians and determining that Lewis could work a full week at a limited, sedentary job.  (Cross-Mot. Summ. J. Attach. #1 Mem. P. & A. 3, ECF No. 11 (citing Admin. R. Attach. #2, 17-19, ECF No. 8).) Colvin contends that the ALJ properly relied on the assessments of state agency medical consultants, Drs. Brodsky and Masters, and medical expert, Dr. Brovender, because these opinions were the most consistent with the record.  (_Id._ (citing Admin. R. Attach. #2, 17-19, 30-33, ECF No. 8; _id._ Attach. #8, 464-71; _id._ Attach. #9, 791-93).)

The Commissioner also maintains that the ALJ found that the opinions of Drs. Jaffe and Seidel were contrary to the great weight of the evidence, which showed that Plaintiff suffered from mild degenerative disk disease and scoliosis.  (_Id._ at 4 (citing Admin. R. Attach. #2, 16-17, 19, ECF No. 8; _id._ Attach. #7, 250-305; _id._ Attach. #9, 791-93).)  Evidence of Lewis's mild condition included (1) a May 2009 orthopedic evaluation which showed that Plaintiff was a "relatively healthy-appearing individual with no apparent distress[;]" (2) an MRI that showed no impingement; and (3) an MRI from June 2009 which showed no evidence of osteolysis or fracture deformity.  (_Id._ (citing Admin R. Attach. #7, 379-90, 382-83, 386).)

Colvin insists that Drs. Jaffe and Seidel based their opinions on Lewis's subjective complaints. (Id.) "Since the ALJ properly found Plaintiff's complaints not fully credible, it was appropriate for the ALJ to not fully credit Drs. Jaffe and Seidel's opinions, which was based upon those exaggerated claims." (Id. (citations omitted).) Moreover, Defendant alleges that the ALJ properly discounted the opinions of the treating physicians because their conclusions were inconsistent with Lewis's activities of daily living, which showed that he had a higher level of functioning. (Id. at 5 (citing Admin. R. Attach. #2, 19, ECF No. 8).) The Commissioner contends that in light of these specific and valid reasons, ALJ Parker did not err. (Id.)

In his decision, the ALJ determined that Plaintiff was impaired with spondylotic foraminal stenosis with back pain, disk disease/mild scoliosis, cerebral aneurysm, and diabetes mellitus. (Admin. R. Attach. #2, 15, ECF No. 8.) Lewis did not have an impairment that met one of the listed impairments. (Id.) Judge Parker further stated that after considering the entire record, Plaintiff had the RFC to perform a full range of sedentary work, including his past relevant work as a financial manager and sales manager. (Id. at 15-16, 19.)

The administrative law judge found fault with the opinions of Drs. Jaffe and Seidel:

> As for the opinion evidence, Michael Jaffe, M.D., the claimant's treating physician completed a lumbar spine questionnaire dated April 30, 2010, and provided opinion evidence regarding the claimant's ability to work (Exhibits 14F and 19F). The undersigned gives little weight to Dr. Jaffe's findings as they are not supported by the evidence of record and these findings are excessively restrictive. Dr. Jaffe states that the claimant's back pain is constant and that the claimant's

34

bilateral lower extremity weakness and fatigue limit
functionality. Dr. Jaffe's opinions are inconsistent
with the evidence that establishes that [t]he claimant's
spouse provided information indicative of a much higher
level of functioning than that assessed by the claimant's
medical sources, and the claimant continues to engage in
routine daily activities independently, including the
many duties listed herein above, which is inconsistent
with the excessively restrictive functional assessment
indicated by Dr. Jaffe. Additionally, Janith Seidel,
M.D., provided a narrative report dated March 8, 2011,
mirroring almost verbatim Dr. Jaffe's findings, all of
which appear to be primarily based on the claimant's
subjective complaints, i.e., the claimant "estimates his
level of pain to be moderately severe" and the claimant
"describes his pain to be constant and diffuse." Dr.
Seidel's opinions regarding the claimant's functional
capacity are excessively restrictive based on the
objective evidence of record, and the undersigned gives
these opinions little weight (Exhibits 17F and 20F).
Pertinent Kaiser Permanente treatment notes do not
support the excessively restrictive functional capacity
found by Drs. Jaffe and Seidel (Exhibits 1F, 2F, 3F, 9F,
10F, 13F, 18F, 21F). The undersigned finds that the
opinions of the medical expert, who opined that the
claimant retains the functional capacity for sedentary
level work activity, and who is familiar with the
Commissioner's regulations for evaluating disability is
entitled to great weight. The undersigned has considered
the opinions of Dr. Seidel who is a family practitioner,
and Dr. Jaffe, the claimant's treating physicians, and
finds that these opinions are not entitled to controlling
weight as they are not supported by medically acceptable
clinical signs and laboratory diagnostic findings.
Additionally, the opinions of Drs. Seidel and Jaffe are
inconsistent with other substantial evidence of record,
including the testimony of the medical expert at the
hearing in this matter as well as the claimant's own
statements regarding his functional capacity (SSR 96-2,
97-7 and 96-8).

(Id. at 19.)

Lewis complains that the ALJ improperly rejected the opinions
of two treating physicians. (Pl.'s Mot. Summ. J. Remand Attach.
#1, 11, ECF No. 10.) The ALJ is not obligated to accept or reject
the opinion of a treating physician in full. Adorno v. Shalala, 40
F.3d 43, 48 (3d Cir. 1994). The ALJ "may properly accept some
parts of the medical evidence and reject other parts, but [the ALJ]

must consider all the evidence and give some reason for discounting the evidence [he] rejects." <u>Id.</u>

The opinions of Drs. Jaffe and Seidel were contradicted by Dr. Brovender. (Admin. R. Attach. #2, 19, ECF No. 8.) Thus, although clear and convincing reasons for disregarding the contradicted opinions of Plaintiff's treating physicians were not required, the ALJ was obligated to give specific, legitimate reasons that were supported by substantial evidence in the record. <u>See</u> <u>Batson</u>, 359 F.3d at 1195; <u>Tonapetyan</u>, 242 F.3d at 1148; <u>Lester v. Chater</u>, 81 F.3d at 830.

### 1. Dr. Jaffe

The ALJ gave less weight to Dr. Jaffe's opinion because it was contrary to the evidence in the record. (Admin. R. Attach. #2, 19, ECF No. 8.) Specifically, ALJ Parker rejected Dr. Jaffe's opinion because it (1) conflicted with the Lewises' assertions about Plaintiff's functionality; (2) was inconsistent with the opinion of the medical expert, Dr. Brovender; and (3) was premised primarily on Plaintiff's subjective complaints. (<u>Id.</u>) Based on the entire record, the ALJ determined that the treating physician's findings were excessively restrictive. (<u>Id.</u>)

### a. Conflict with Richard and Juanita Lewis's statements

First, the ALJ discredited Dr. Jaffe's finding that the claimant's back pain was constant and that his lower extremity weakness and fatigue limited his functionality because these assertions conflicted with the Lewises' statements about Plaintiff's functionality. (<u>Id.</u>; <u>compare</u> <u>id.</u> Attach. #6, 184-91, <u>with</u> <u>id.</u> Attach. #9, 805-12, 876.) As noted above, the ALJ discussed in depth the activities that the claimant and his wife

represented that he could perform. (Id. Attach #2, 19.) Conflicts in the medical evidence are resolved by the Commissioner. Sprague, 812 F.2d at 1230. Here, the contradiction between Dr. Jaffe's opinion and the Lewises' statements is a specific and legitimate reason, supported by substantial evidence, for discounting Dr. Jaffe's opinion. See Fisher v. Astrue, 429 F. App'x 649, 652 (9th Cir. 2011) (holding that conflict between doctor's opinion and claimant's daily activities was a specific and legitimate reason to discount opinion); see also Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (noting that a treating physician's opinion may be discounted where it is inconsistent with a claimant's level of functioning).

### b. Conflict with medical expert testimony

Next, the ALJ discounted Dr. Jaffe's opinion because it was inconsistent with Dr. Brovender's assessment. (Admin. R. Attach. #2, 19, ECF No. 8 (citing id. Attach. #9, 805-12).) The ALJ noted that the medical expert testified that Lewis had the ability to perform sedentary work. (Id.) This contrasted with Dr. Jaffe's statement that Plaintiff was "unable to work." (See id. Attach. #9, 811.)

In addition to Dr. Brovender's conclusions, two other nonexamining physicians, Drs. Brodsky and Masters, opined that Lewis could perform sedentary work. (Admin. R. Attach. #7, 470, ECF No. 8; id. Attach. #9, 792-93.) As discussed above, "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining or a treating physician." Lester, 81 F.3d at 831 (citations omitted). Thus, by themselves, these opinions do

not constitute substantial evidence.  See <u>Vasquez v. Astrue</u>, No. CV11-2406-PHX-GMS, 2013 WL 491977, at *6 (D. Ariz. Feb. 8, 2013) (citing <u>Lester</u>, 81 F.3d at 831) ("[B]ecause neither Dr. Stevenson nor Dr. Downs examined the claimant, their assessments, either separately or in concert, cannot by themselves constitute substantial evidence sufficient to justify the rejection of Dr. Geary's opinion by the ALJ.").

Yet, ALJ Parker's determination may stand if other evidence in the record supports Dr. Brovender's findings.  <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d at 600; <u>Saelee v. Chater</u>, 94 F.3d at 522.  The ALJ pointed to additional medical evidence that conflicted with Dr. Jaffe's "excessively restrictive" functional capacity assessment.  (Admin. R. Attach. #2, 19, ECF No. 8.) Specifically, ALJ Parker relied on Exhibits 1F, 2F, 3F, 9F, 10F, 13F, 18F, and 21F.  (<u>Id.</u>)  Independent clinical findings supported the ALJ's conclusion that Lewis's condition was relatively mild. (<u>See</u> <u>id.</u> Attach. #7, 257, 382-83 (Exhibits 1F and 3F) (finding no clear impingement on the neural elements based on MRI results and diagnosing Plaintiff with mild dextroscoliosis); <u>id.</u> at 259, 385 (diagnosing Lewis with mild scoliosis and spondylolisthesis); <u>id.</u> at 260-61, 386-87 (stating that Plaintiff suffered from spondylotic foraminal stenosis and "minor-degree" spondylosis, based on an MRI results); <u>id.</u> at 280 (diagnosing Lewis, based on an x-ray of his lumbar spine, with "mild degenerative changes with mild scoliosis and spondylolisthesis").)  Accordingly, the testimony of Dr. Brovender was a specific and legitimate reason, supported by substantial evidence, for rejecting Dr. Jaffe's medical opinion. <u>See</u> <u>Zeidman v. Astrue</u>, No. CV 11-9368-JPR, 2012 WL 4868118, at *7

38

(C.D. Cal. Oct. 15, 2012) (citing <u>Tonapetyan</u>, 242 F.3d at 1149)

("The ALJ was entitled to rely on [the medical expert, consultive

examiner, and state agency consultant's] opinions in formulating

his RFC assessment because they were largely consistent with each

other and with other independent evidence in the record, including

the above-noted EMG study, MRI, and x-ray results.").

      **c.   Primarily based on Plaintiff's subjective complaints**

     Finally, the ALJ determined that Dr. Jaffe's opinion was

primarily based on Lewis's subjective complaints. (Admin. R.

Attach. #2, 19, ECF No. 8.) It is well established that "[a]n ALJ

may reject a treating physician's opinion if it is based 'to a

large extent' on a claimant's self-reports that have been properly

discounted as incredible." <u>Tommasetti v. Astrue</u>, 533 F.3d at 1041;

<u>see</u> <u>Bayliss v. Barnhart</u>, 427 F.3d at 1217; <u>Tonapetyan</u>, 242 F.3d at

1149; <u>Morgan</u>, 169 F.3d at 602; <u>Andrews</u>, 53 F.3d at 1043. Yet, as

discussed above, the ALJ failed to properly discount Plaintiff's

credibility. To the extent the ALJ rejected Dr. Jaffe's opinion

because it was based on subjective claims, this was in error. <u>See</u>

<u>Valenzuela v. Colvin</u>, No. CV 11-812-TUC-HCE, 2013 WL 1092886, at *8

(D. Ariz. Mar. 15, 2013) (holding that it was error to reject

treating physicians' opinions because they were based on a

claimant's subjective complaints, adding that the ALJ did not

properly analyze the claimant's credibility) (citing <u>Sousa v.</u>

<u>Callahan</u>, 143 F.3d 1240, 1244-45 (9th Cir. 1998)).

     It is not clear from Judge Parker's decision, however, that he

rejected Dr. Jaffe's opinion because it was based on properly

discounted self-reports by Lewis. The ALJ stated that "Janith

Seidel, M.D., provided a narrative report dated March 8, 2011,

mirroring almost verbatim Dr. Jaffe's findings, all of which appear
to be primarily based on the claimant's subjective complaints
. . . ."  (Admin. R. Attach. #2, 19, ECF No. 8.)  He also found
that Dr. Jaffe's opinions are "not supported by the evidence of
record and [his] findings are excessively restrictive."  (Id.)

Courts may not engage in "post hoc rationalizations that
attempt to intuit what the [ALJ] might have been thinking."  Bray
v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1226 (9th Cir. 2009).
The Court may not conjecture as to whether reservations about
Lewis's subject complaints was a basis for the ALJ rejecting Dr.
Jaffe's opinion.

An ALJ may discredit a physician's opinion that is
"conclusory, brief, and unsupported by the record as a whole . . .
or by objective medical findings."  Batson, 359 F.3d at 1195.  But
Dr. Jaffe's opinions are neither conclusory nor brief.  (See Admin.
R. Attach. #8, 515-19, ECF No. 8; id. Attach. #9, 806-12, 876.)
Moreover, on April 12, 2010, Dr. Jaffe interviewed Plaintiff and
conducted a physical examination and tested Lewis's lumbar flexion,
sensory loss, deep tendon reflexes, lumbar paraspinal spasms, and
lumbar facet tenderness.  (Id. Attach #8, 517-18.)  Dr. Jaffe also
conducted a straight leg raise test, SI compression test, a femoral
stress test, and a motor examination.  (Id. at 518.)  The doctor
reported that "Mr. Lewis's clinical findings include limited range
of motion in the lower back, tenderness and swelling in the lumbar-
sacral area, muscle spasms, sensory loss, and muscle weakness in
the bilateral lower extremities, and reflex changes and muscle
atrophy in the lower left leg."  (Id. Attach. #9, 876.)
Additionally, Dr. Jaffe opined on how long Lewis could sit, stand,

40

and walk during the work day, as well his ability to lift and carry objects. (Id.)

Based on the evidence in the record, the Court finds that Dr. Jaffe, at least in part, relied on objective medical tests to inform his opinion. See Garza v. Astrue, 380 F. App'x 672, 673 (9th Cir. 2010) (noting that sensory and motor examinations may yield objective evidence); Wooten v. Astrue, No. CV 10-8264 JC, 2011 WL 3320065, at *4 (C.D. Cal. July 29, 2011) (declining to second guess objective findings regarding reduced range of motion, sensory loss, tenderness, muscle spasms, and weakness); Scott v. Astrue, No. 1:08-cv-1194 GSA, 2009 WL 2379981, at *7 (E.D. Cal. July 30, 2009) (remarking that testing range of motion and tendon reflexes are objective tests); Lemus v. Astrue, No. 07-cv-01773-TAG, 2009 WL 817546, at *10 (E.D. Cal. Mar. 27, 2009) (stating that a straight leg raise test yields objective evidence); Wilson v. Astrue, No. CV 07-7532 AN, 2008 WL 4382704, *2 (C.D. Cal. Aug. 26, 2008) (noting that muscle spasms, reflex changes, sensory loss, muscle weakness, abnormal gait, tenderness, muscle atrophy, and loss of range of motion are objective findings).

It is not clear whether the ALJ considered the objective findings that supported Dr. Jaffe's opinion, and if so, how they were insufficient to support the doctor's conclusions. See Arevalo v. Colvin, No. SA CV 12-895-PLA, 2013 WL 1314008, at *6 (C.D. Cal. Mar. 29, 2013) (finding that ALJ erred by rejecting treating physician's opinion, which was based both on plaintiff's subjective complaints and on a medical examination); Trevino v. Colvin, No. SA CV 12-0185 JCG, 2013 WL 645455, at *2 (C.D. Cal. Feb. 20, 2013) ("Plaintiff's subjective complaints have no bearing on Dr. Pan's

medical opinion, which, as established above, was based on
objective medical techniques.  This reason, therefore, also fails
to satisfy the specific and legitimate standard."); Jones v.
Astrue, No. 11-35660, 2012 WL 6760094, at *1 (9th Cir. Dec. 31,
2012) (finding that ALJ did not provide specific and legitimate
reasons for discounting medical opinion based on purportedly
insufficient objective evidence when it was unclear whether the ALJ
considered relevant treatment notes and did not articulate what
made them insufficient to support the opinion).  Cf. Ryan v. Comm'r
of Soc. Sec., 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (finding
error, under the clear and convincing standard, where the ALJ
asserted that the examining physician relied too heavily on the
plaintiff's subjective complaints, when there was nothing in the
record to suggest that the examining physician relied more heavily
on the plaintiff's subjective complaints than on his own clinical
observations).  Accordingly, insofar as ALJ Parker discounted Dr.
Jaffe's opinion because it was primarily based on Lewis's
subjective complaints, this was not a specific and legitimate
reason for rejecting the treating physician's assessment.

Yet, on the whole, the ALJ provided other specific, legitimate
reasons supported by the record for the limiting the weight given
to Dr. Jaffe's opinion.  See Black v. Astrue, No. 3:10-cv-06409-MO,
2011 WL 6130534, at *3 (D. Or. Dec. 7, 2011) (upholding ALJ's
rejection of treating physician's opinion in favor of nonexamining
physicians' opinions whose assessments were the most consistent
with the medical record and plaintiff's reported daily activities);
Jones v. Astrue, No. 1:06-cv-01585 LJO GSA, 2008 WL 1970645, at *14

(E.D. Cal. May 5, 2008) (same).  On this basis, reversal or remand is not warranted.

### 2. Dr. Seidel

The ALJ also rejected Dr. Seidel's opinion because it conflicted with Lewis's statements regarding his functionality and the opinion of medical expert Brovender.  (Admin. R. Attach. #2, 19, ECF No. 8.)  Additionally, the ALJ noted that the family practitioner's opinion was primarily based on Dr. Jaffe's assessment and, in turn, on Plaintiff's subjective complaints. (Id.)[1]  Nevertheless, the ALJ properly relied on Plaintiff's daily activities, objective medical evidence, and Dr. Brovender's assessment.  Accordingly, ALJ Parker provided specific and legitimate reasons for rejecting the opinion of Dr. Seidel.

## C. **Failure of Appeals Council to Remand in Light of New Evidence**

Finally, Plaintiff contends that the Appeals Council improperly chose not to disturb the ALJ's decision when presented with additional evidence that was contrary to Judge Parker's findings.  (Pl.'s Mot. Summ. J. Remand Attach. #1, 16, ECF No. 10.) This new evidence was the opinion of Dr. Alanson Mason, an orthopedic surgeon who conducted a clinical examination of Plaintiff.  (Id.)  Lewis maintains that Dr. Mason's assessment was consistent with Drs. Jaffe and Seidel's findings that Lewis's spine

---

[1]  The ALJ remarked that Dr. Seidel is a family practitioner. (Admin. R. Attach. #2, 19, ECF No. 8.)  The courts "generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  20 C.F.R. § 416.927(c)(5) (2012); see also Holohan v. Massanari, 246 F.3d at 1202.  Yet, it appears that the ALJ was merely stating Dr. Seidel's title, rather than using her lack of specialization as a basis to reject her opinion.

condition prevented him from working full time. (<u>Id.</u>) "The entire
record before the Council then consisted of two treating sources
and now one examining source who found that Mr. Lewis' spinal
impairments are totally disabling, with no more than outdated
and/or unreasoned opinions by non-examining sources providing the
sole support for the ALJ's decision." (<u>Id.</u>) On this basis,
Plaintiff argues that the Council's refusal to set aside the ALJ's
decision constituted legal error. (<u>Id.</u> at 16-17.)

Defendant counters that Dr. Mason's evaluation is not material
and does not merit a remand of the case. (Cross-Mot. Summ. J.
Attach. #1 Mem. P. & A. 5, ECF No. 11.) The Commissioner maintains
that considering the record as a whole, the ALJ's decision was
still supported by substantial evidence. (<u>Id.</u> at 6.) "Because Dr.
Mason's opinion mirrors other opinion evidence in the record that
the ALJ discussed and properly discounted, it was not material to
the ALJ['s] determination that Plaintiff was not disabled." (<u>Id.</u>)
Colvin insists that the ALJ need not discuss every piece of
evidence. (<u>Id.</u> at 7.) Thus, remand is not required. (<u>Id.</u>)

District courts "do not have jurisdiction to review a decision
of the Appeals Council denying a request for review of an ALJ's
decision, because the Appeals Council's decision is a non-final
agency action." <u>Brewes v. Comm'r of Soc. Sec. Admin.</u>, 682 F.3d
1157, 1161 (9th Cir. 2012) (citing <u>Taylor v. Comm'r of Soc. Sec.
Admin.</u>, 659 F.3d 1228, 1231 (9th Cir. 2011)). "When the Appeals
Council declines review, 'the ALJ's decision becomes the final
decision of the Commissioner,' and the district court reviews that
decision for substantial evidence, based on the record as a whole."
<u>Id.</u> at 1161-62 (citations omitted).

44

In <u>Brewes</u>, the Ninth Circuit held that when a claimant submits
evidence for the first time to the Appeals Council, and that
information is then considered by the Council in denying review of
the ALJ's decision, the new evidence is considered to be part of
the administrative record. <u>Id.</u> at 1162. District courts must
consider that new evidence in determining whether an ALJ's decision
was supported by substantial evidence. <u>Id.</u> at 1163. When the
Appeals Council accepts a claimant's new evidence and makes it part
of the record, the Council essentially concludes that the evidence
is material within the meaning of 20 C.F.R. § 404.970(b). <u>Id.</u> at
1164. New evidence must only be considered if it relates to the
time period "on or before" the date of the ALJ's decision. <u>Id.</u> at
1162 (citing 20 C.F.R. § 404.970(b)).

Here, ALJ Parker rendered his decision on June 22, 2011.
(Admin. R. Attach. #2, 10, ECF No. 8.) Dr. Mason's only evaluation
of the Plaintiff was on October 25, 2011; the doctor completed a
cervical spine impairment questionnaire on November 6, 2011.
(Admin. R. Attach. #9, 896, 908, 914, ECF No. 8.)[2] This additional
evidence does not warrant reversal because it postdates the ALJ's
decision. <u>See</u> <u>Brewes</u>, 682 F.3d at 1162; <u>Cervantes v. Astrue</u>, No.
CV 12-3794 JC, 2012 WL 5964526, at *6 (C.D. Cal. Nov. 28, 2012)
(holding that new evidence from a treating physician did not
warrant reversal of the ALJ's nondisability determination because
the physician treated the plaintiff two months after the ALJ issued
his decision); <u>Fry v. Astrue</u>, No. CV-11-199-JPH, 2012 WL 5906689,
at *6 (E.D. Wash. Nov. 26, 2012) (rejecting argument that Appeals

_____

[2] Plaintiff incorrectly states that the questionnaire was
completed on April 6, 2011. (<u>See</u> Pl.'s Mot. Summ. J. Remand
Attach. #1, 10, ECF No. 10.)

Council erred when it did not consider new evidence that was dated sixteen months after the ALJ's decision).

Moreover, nothing in Dr. Mason's evaluation indicates that it was intended to provide a retrospective assessment of Plaintiff's medical condition. The October 25, 2011 assessment contains a record of Lewis's medical history, medication, and complaints. (Admin. R. Attach. #9, 896-900, ECF No. 8.) The orthopedist also conducted a physical examination. (Id. 901-04.) He diagnosed Plaintiff with lumbar spondylosis; dextroscoliosis; facet joint arthrosis; status post-lumbar laminectomy; discectomy and fusion with instrumentation at L4-5 and L5-S1; narcotic drug dependency; diabetes; and diabetic polyneuropathy. (Id. at 904.)

Dr. Mason's assessments make no reference to the relevant time period in this case. Rather, his comments are in the present tense and note that Lewis "has a severe impairment" and that his "multiple co-mobidities preclude his return to substantial gainful employment." (Id.) Accordingly, this evidence does not provide a basis for reversing the ALJ's decision or remanding the case. See Calvey v. Astrue, No. CV 12-0472-JPR, 2013 WL 180033, at *4 (C.D. Cal. Jan. 17, 2013) (holding that evidence from the time period after the ALJ rendered his decision is not material and thus must be given little weight when reviewing the ALJ's decision); Marin v. Astrue, No. CV 11-09331 AJW, 2012 WL 5381374, at *6 (C.D. Cal. Oct. 31, 2012) (stating that case should not be remanded where the new evidence did not contain a retrospective assessment of the claimant's condition); see also Hudson v. Astrue, No. CV-11-0025-CI, 2012 WL 5328786, at *6 (E.D. Wash. Oct. 29, 2012) ("[B]ecause the opinions expressed are not relevant to the

46

Plaintiff's condition during period at issue, they could not change the outcome of the proceedings below. Therefore, remand for review by the ALJ is not required.").

## V. CONCLUSION AND RECOMMENDATION

"The decision of the Commissioner must be upheld if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." <u>Howard ex rel. Wolff v. Barnhart</u>, 341 F.3d 1006, 1011 (9th Cir. 2003) (citing <u>Paqter v. Massanari</u>, 250 F.3d 1255, 1258 (9th Cir. 2001)). If the AlJ's decision is not supported by substantial evidence, remand or reversal is appropriate. <u>Gallant v. Heckler</u>, 753 F.2d at 1457.

For the reasons stated above, Plaintiff's Motion for Summary Judgment [ECF No. 10] should be **GRANTED IN PART** and **DENIED IN PART**, and Defendant's Cross-Motion for Summary Judgment [ECF No. 11] should be **DENIED**. The Court recommends a limited remand. On remand to the Social Security Administration, the administrative law judge should explain his reasons for determining the extent to which Lewis was credible and the effect of this determination of Lewis's claim for benefits.

This Report and Recommendation will be submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before August 19, 2013. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed on or before August 26, 2013. The parties are advised that failure to file objections within the

specified time may waive the right to appeal the district court's

order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


Dated: August 5, 2013                    _____
                                         RUBEN B. BROOKS
                                         United States Magistrate Judge

cc:   Judge Battaglia
      All Parties Record